EATON, Respondent, v. ILLINOIS SOUTHERN RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, May 22, 1906.**

**RAILROADS: Fences: Killing Stock.** In an action against a railroad company for double damages for the loss of the plaintiff's cow, where the cow went upon the defendant's track in an unincorporated town at a point where no streets were didicated, at a distance of several hundred feet from a switch or crossing or depot, a finding for plaintiff by the trial court which involved a finding that the right of way could have been fenced without detriment to the public business or danger to the company's employees, will not be disturbed.

Appeal from St. Francois Circuit Court.—*Hon. Chas. A. Killian,* Judge.

AFFIRMED.

*W. S. Anthony* for appellant.

GOODE, J.—This action was instituted to recover double damages for the loss of a cow killed by one of the defendant's engines. The accident occurred in the town of Flat River, which was unincorporated, although it contained several thousand inhabitants. The railroad company had a depot in Flat River at which all trains stopped. One thousand feet, or thereabouts, north of the station is a cattle-guard and defendant's line of railway is unfenced from the cattle-guard to the depot, but is fenced north of the cattle-guard. A side track or spur starts from the main line about twelve feet

south of the cattle-guard and runs southwesterly to a
building called the "Beer House." This spur is intend-
ed to enable cars loaded with beer to be diverted from
the main line to the beer house and there unloaded. The
direction of the railroad through Flat River is north
and south. From 150 to 180 yards south of the cattle-
guard, defendant's line is crossed by another line of rail-
road known as the Crawley switch, though it is really a
branch of the Meramec River and Bonne Terre railroad.
The two railroads cross each other at an acute angle.
At their junction a street or highroad crosses both rail-
roads. This street is, as indicated, from 150 to 180 yards
south of the cattle-guard and nearly that distance south
of the apex of the spur leading to the beer house. The
depot is about five hundred feet south of the crossing.
There was testimony to show that west of defendant's
railroad line and north of the point where it was crossed
by the Crawley branch and the street, the country was
open, with no houses on it except the beer house. A
portion of it was in cornfields. The country between
defendant's line and the Crawley branch, and north of
the crossing and south of the cattle-guard, was vacant.
We speak of the condition existing in 1904 when the ac-
cident occurred. Many houses have been built since on
what was then unoccupied ground. There was evidence
that the land in the vicinity had been laid out into
blocks and streets, but none that the streets had been
dedicated to public use, platted or opened between the
cattle-guard and the crossing of the two railroads; that
is, over a distance of from 450 to 500 feet. There was
one street south of the crossing of the two roads and
north of but near the depot. The cow was struck by an
engine about twelve feet south of the cattle-guard and
carried one hundred feet north of it. The defense is that
the company was not required to have its right of way
inclosed at the point where, presumably, the cow went

119 App.—41

on the track, because the law requires no fences where streets are platted and dedicated to public use, or where it is necessary to leave railway tracks open for convenience in transacting business with the patrons of the company, or where the employees of the company will be endangered in handling cars and trains. It appears from the statement that there was a long uninclosed portion of track between the point to the south where defendant's line was crossed by the public street and the cattle-guard to the north. No streets had been dedicated or opened between those points, so far as the testimony discloses. The southernmost of the two points was five hundred feet north of the station. There was no switch or side track along there except the one to the beer house. On these facts the trial court, sitting as a jury, found the issues for the plaintiff. No declarations of law were requested, and the question for our decision is whether or not the evidence warranted an inference that defendant's right of way could have been inclosed where the cow entered without obstructing a public street or road, or detriment to the public in doing business with the company at its station, or danger to the company's employees. We do not think the evidence is conclusive in favor of the defendant on these several issues. In the absence of proof that platted, dedicated or used streets would have been closed by fencing the right of way, an exemption from fencing on that score cannot be granted. As to the inconvenience to people having business at the station and the risk to the company's employees, a question of fact was raised for the decision of the trier of the fact. The law of such cases is discussed and the authorities examined in Smith v. R. R., 111 Mo. App. 410, 85 S. W. 972; Acord v. R. R., 113 Mo. App. 84, 87 S. W. 537. A perusal of the testimony has failed to convince us that we would be justified in saying the court erred in holding the company could fence between the cattle-guard and the crossing, that is, over the interven-

ing space of four or five hundred feet, without hampering the public or endangering its employees.

The judgment is affirmed. All concur.